| | |
|---|---|
| 1 | Your Name: Alma Dew-Paige |
| 2 | Address: PO Box 71514 Oakland, Ca 94612 |
| 3 | |
| 4 | Phone Number: 510 857-2037 |
| 5 | E-mail Address: AlmaDewPaigeADP@Gmail.Com |
| 6 | Pro Se Plaintiff |

FILED
MAR 20 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

E-Filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALMA DEW-PAIGE | Case Number C18-01722 JSC |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF:** |
| vs. | **(1) FAIR HOUSIING ACT (42 U.S.C. § 3604(f)(3)(B))** |
| OAKLAND HOUSING AUTHORITY | **(2) ADA – FAILURE TO PROVIDE REASONABLE ACCOMMODATION** |
| | **(3) REHABILITATION ACT** |
| | DEMAND FOR JURY TRIAL |
| Defendant. | Yes ☑  No ☐ |

COMPLAINT
PAGE 1 OF 8

## PARTIES

1. **Plaintiff.** Alma Dew-Paige

2. **Defendant.** Oakland Housing Authority, 1540 Webster St. Oakland, CA 94612

## JURISDICTION

3. My case belongs in federal court under federal question jurisdiction because it is based on the Fair Housing Act, Americans with Disabilities Act, and Rehabilitation Act.

## VENUE

4. Venue is appropriate in this Court because a substantial part of the events I am suing about happened in this district.

## INTRADISTRICT ASSIGNMENT

5. Because this lawsuit arose in Alameda County, it should be assigned to the San Francisco/Oakland Division of this Court.

## STATEMENT OF FACTS

6. I am a 68 year-old woman.

7. I received a Section 8 voucher from the Berkeley Housing Authority in 2005. The voucher was for a two-bedroom apartment to accommodate me and my live-in health aide.

8. In 2007, I found a two-bedroom apartment on Allendale Avenue in East Oakland, and ported to the Oakland Housing Authority ("OHA"). I lived there with a health worker for about five years.

9. Between April 2011 and 2012, the property owner had received a number of notices violations from PG&E and East Bay MUD. There was a problem with the heating unit and there were apparently water and sewer leaks. I continued to pay my PG&E and water bills.

10. One of the agencies put a notice on the window that a permit needed to be obtained for work on the apartment building and that water testing needed to be done on the property. At this point, my neighbor moved out. I contacted OHA and told them about the permitting and water testing issues, and that there were water and sewer problems, including that the property smelled

COMPLAINT
PAGE 2 OF 8

very bad, like the sewer was backing up. No one from OHA came to the property to inspect it or took any steps to assist me.

11. The yard and sidewalks flooded with apparent sewage, and I informed OHA of this situation over and over. Finally, my neighbors called Metro Newspaper to come out.

12. In November 2012, the water at the property was shut off, apparently to fix the leaks and sewer issues. Around this time I began getting sick, having difficulty breathing, spitting up, and being nauseous from the smell and contamination at the property.

13. Although I had notified OHA of the increasing problems with the water and sewer, in November 2012, OHA issued me a notice to vacate the property, or to pay an *increased* rent—almost $400 more than the $263 I was currently paying from my approximately $900 in income each month. I contacted the HUD helpline, and was informed that I was not obligated to pay the increased rent because it was more than half of my income.

14. But, I wanted to leave the property. I spoke to the person who then owned the property, Mr. Kim, and agreed to move out by December 1, 2012. However, Mr. Kim repeatedly messed up my OHA paperwork, which delayed my move.

15. In January 2013, because OHA had forced me to stay in the uninhabitable apartment I was diagnosed with a bacterial infection in my lung. OHA told me that if I moved out of the uninhabitable, I would lose my voucher.

16. Eventually, I couldn't take it any longer at that disgusting property and had to move out. I moved in with family, and OHA terminated my voucher.

17. Working with an advocate, I was finally able to get OHA and the City of Oakland out to inspect the property in late February or March 2013. It, of course, failed the inspection.

18. However, receipt of my voucher was delayed nearly a year by OHA. I lived in a shelter in Richmond for a time, and then in a shelter in Berkeley. In the meantime, I was forced to use public transportation to get around from Richmond and Berkeley and in June 2014 I fell, injuring my ankle, and was in a boot for nine weeks. Throughout this time, I and an advocate frequently contacted OHA to figure out why my voucher was delayed.

19. Although I had immediately filed a request for a hearing after my voucher was terminated, and OHA finally agreed that the apartment was not fit for anyone to live in, it took until April 2014 for OHA to give me a voucher, and then it was only for a one bedroom. The voucher was dated April 10, 2014 and expired on July 9, 2014.

20. When I finally received the voucher, I found an apartment in West Oakland. I took all of my paperwork for the apartment to OHA to try to schedule an inspection. I was then told that I needed to be recertified. I sat at OHA and completed all of the recertification paperwork that same day.

21. OHA did not follow up on my recertification paperwork or on my request for an inspection. In May 2014, I lost the West Oakland apartment because OHA had failed to act on my paperwork. My advocate and I made an appointment, through her secretary, to see supervisor Ms. Michelle Hassan at OHA. Because of the recertification OHA raised only once my voucher was already pending and I requested an inspection, that voucher was essentially non-existent. I hoped to explain this to Ms. Hassan. However, neither she nor her secretary showed up for work at OHA on the date of our scheduled appointment. We did not receive a new appointment, or even a follow up call. Nothing.

22. I wrote a letter to another supervisor, Ms. Joetta Farrow, explaining my situation.

23. It took another five months to get any sort of voucher. This time, following my conversation with Ms. Farrow, Ms. Hassan gave me a 30-day voucher from November 13, 2014 to December 12, 2014, for a one bedroom apartment, even though I had repeatedly submitted requests with medical documentation for a two-bedroom apartment to accommodate my live-in aide, something for which the Section 8 regulations expressly provide, and which I had a two-bedroom voucher for nearly approximately a decade. See 24 C.F.R. § 982.316.

24. I found a senior apartment in Dublin, completed all of the paperwork there, and was accepted for an apartment. I went to OHA and completed the paperwork to port out of Oakland. After waiting there for some time, I was informed by Ms. Angela Eastman that I could not port out of Oakland because it takes twenty days to port, and there were only eight days left on my voucher. I was told I had eight days to find a Section 8 apartment in Oakland.

COMPLAINT
PAGE 4 OF 8

25. I have since learned, however, that once a Section 8 recipient finds an apartment but the housing authority needs time inspect it or finalize paperwork, the housing authority is supposed to suspend the time of the voucher. See 24 C.F.R. § 982.3.3(b). I think is commonly called a "rifter." OHA had failed to give me this option with either voucher in 2014, even though, despite my illnesses, I had worked so hard to find apartments and get all of my paperwork done both times, and the only delay was OHA.

26. In December 2014, I requested a reasonable accommodation of more time by filing with OHA. They did not respond to my request. I submitted many similar requests from that time through July 2015. OHA did not respond for many months.

27. At the end of July 2015, I was hospitalized in Alameda County Hospital for three and a half weeks. I was diagnosed with cancer. I had surgery and was given eight pints of each blood and plasma. After leaving the hospital, I was put into a Rehabilitation Center, Brookdale, for approximately six months, until mid-February, 2016.

28. *Knowing I was in the Rehabilitation Center*, OHA finally gave me a 30-day voucher in February 2016. I was already on many waiting lists for apartments in Oakland, but it was impossible to find anything. An aide assisted me with finding a place in Merced. I found two places, but neither passed inspection. The other places required a "project-based voucher" for people working in that area. Although I was not able to find a place in Merced, Merced Housing Authority did give me a rifter for the time it took to inspect the two potential apartments, which paused the time on my voucher. I ported back to Oakland, and then to Sacramento.

29. Although my complete paperwork, including medical documentation establishing my entitlement to a two-bedroom, was sent to Sacramento for a two-bedroom apartment, a new Sacramento Housing worker incorrectly gave me a 30-day voucher for a one-bedroom apartment. As soon as I got the voucher, I contacted three of my doctors, who the very next day faxed over the paperwork documenting my need for an in-home worker, and thus a two-bedroom apartment. For a week and a half I kept calling Sacramento Housing Authority to confirm that they had received the faxes. I finally made it to a supervisor, who confirmed that the faxes had been there for over a week. Finally, I got a voucher, but it was not signed by SHA.

COMPLAINT  
PAGE 5 OF 8

30. I took it back in for signature. By the time SHA gave me a signed voucher for a two bedroom, I had *two days* left on it. Because of the delay caused by SHA's failure to review and approve my reasonable accommodation paperwork for a two bedroom, I asked SHA for additional time. I also contacted OHA and asked for additional time.

31. I also found an apartment right away and filled out the rifter paperwork with the landlord. I borrowed money for the deposit, paid for credit checks for me and my in-home aide. SHA no-showed for three inspections. I continued following up with them, almost daily, and with the apartment at least weekly.

32. By this time, I was getting sicker and sicker. I had to return to Berkeley to start radiation on December 6, 2016. The treatment I needed was not available in Sacramento.

33. After more than three months, when the Sacramento apartment was finally going to be inspected, a new manager told me I needed to pay an *additional* $900 deposit. I told him that I couldn't pay that additional amount, and that I had not been the one who caused the delay, because that was SHA.

34. When that apartment refused to move forward without an additional deposit, and I was not physically able to look for other apartments in Sacramento due to my cancer and treatment, SHA transferred my voucher back to OHA, in March, 2017.

35. OHA did not provide me with a voucher once I transferred back from SHA.

36. Although I requested a reasonable accommodation of more time to find a place, given my serious medical conditions, OHA terminated my voucher in 2017. 24 C.F.R. 982.303(b)(2) provides:

> If the family needs and requests an extension of the initial voucher term as a reasonable accommodation, in accordance with part 8 of this title, to make the program accessible to a family member who is a person with disabilities, the PHA must extend the voucher term up to the term reasonably required for that purpose.

//
//
//

COMPLAINT
PAGE 6 OF 8

## FIRST CLAIM

### Violation of Fair Housing Act

37. During the relevant time, I suffered from a handicap as defined in 42 U.S.C. § 3602(h) because I had physical or mental impairments, including bone cancer, that substantially limited one or more of my major life activities.

38. Defendant knew of my handicap or should reasonably be expected to know of it because I had submitted documentation of my conditions along with my recertification paperwork in 2014, resubmitted medical documentation at least three times between 2014 and 2016, was reapproved for a two-bedroom apartment to accommodate my medically necessary live-in aid in 2016, and informed OHA each time I was hospitalized.

39. An accommodation in the form of a proper two-bedroom voucher additional time to locate a suitable rental was requested on multiple occasions, and was reasonable.

40. Defendant refused to make such accommodation.

## SECOND CLAIM

### Violation of ADA

41. I am a "qualified individual with a disability".

42. I was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the Oakland Housing Authority.

43. Such exclusion, denial of benefits, or discrimination was by reason of my disability.

## THIRD CLAIM

### Violation of Rehabilitation Act, Section 504

44. I am an "individual with a disability".

45. I am "otherwise qualified" to receive benefits of a program.

46. I was denied the benefits of the program solely by reason of my disability.

47. The Section 8 program receives federal financial assistance.

//

//

COMPLAINT

PAGE 7 OF 8

## DEMAND FOR RELIEF

I am requesting reinstatement of my two-bedroom Section 8 voucher with sufficient time to locate a suitable rental unit that passes inspection; damages for my emotional distress and pain and suffering for being denied the voucher for so many months and repeatedly being denied reasonable accommodation of my disability; damages for the amounts I have paid for housing in excess of what I would have paid with my voucher; and an order directing Oakland Housing Authority to cease its violations of 24 C.F.R. 982.303(b)(2) and (c).

## DEMAND FOR JURY TRIAL

I demand a jury trial on all issues.

Respectfully submitted,

Date: 3/20/18          Sign Name: *Alma Dew-Paige*

Print Name:   Alma Dew-Paige

Pro Se Plaintiff

COMPLAINT
PAGE 8 OF 8